**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

ROBERT J. CANTRELL,                    )
                                       )
Petitioner,                            )
                                       )
        v.                             )      No.    2:12-CV-59
                                       )             2:07-CR-44
UNITED STATES OF AMERICA,              )
                                       )
Respondent.                            )

## OPINION AND ORDER

This matter is before the Court on the Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed by Defendant, Robert J. Cantrell, on February 7, 2012.[1]   For the reasons set forth below, his petition is **DENIED**.   Further, this Court declines to issue Defendant a certificate of appealability.


BACKGROUND

The substantive facts and procedural posture underlying this case are familiar to all parties, as well as the Court.   Defendant, Robert J. Cantrell, was charged in an eleven count indictment. Counts One through Four alleged mail fraud and wire fraud, in violation of Title 18 U.S.C. sections 1341 and 1346. Counts Five through Seven charged Defendant with insurance fraud, in violation

---

[1]Notably, after granting both sides significant extensions of time, this petition was not fully briefed until November 5, 2012.

of Title 18 U.S.C. section 1341, by fraudulently representing that his adult children were employees of Addiction and Family Care, Inc. ("AFC") in order to procure health insurance for them under AFC's group insurance plan.  Counts Eight through Eleven alleged Defendant filed false income tax returns for the years 2001 through 2004, in violation of Title 26 U.S.C. section 7206(1).

On May 27, 2008, a jury trial commenced in this case.  The Government introduced evidence for five days and, on June 5, the Government concluded its presentation of testimony and evidence. After the Government rested its case, the Defendant orally moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  The Defendant raised a host of arguments as to why he was entitled to judgment as a matter of law.  Among those, Defendant argued that "no one ever identified Mr. Cantrell in court as the Defendant." (Gov. Ex. 0, p. 3).  The Court denied the Rule 29 motion in all respects, except as to the issue of whether the Government properly identified the Defendant.  (DE# 62).  This issue was taken under advisement and the trial continued.  At the conclusion of trial, the jury returned guilty verdicts on all eleven counts. Following the jury verdict, the Court denied Cantrell's motion for judgment of acquittal and motion for new trial.

On March 31, 2009, Cantrell was sentenced to a 78 month term of imprisonment on each of Counts 1–7 and 36 months on each of

Counts 8-11, all to be served concurrently. Cantrell then appealed his conviction and sentence to the Seventh Circuit Court of Appeals. *United States v. Cantrell*, 617 F.3d 909 (7th Cir. 2010). The Seventh Circuit affirmed Cantrell's conviction and sentence. *Id*. Cantrell has now filed the instant section 2255 petition, challenging his convictions for honest services fraud , claiming constitutionally ineffective assistance of both his trial and appellate counsel.

DISCUSSION

Habeas Corpus Relief

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. Untied States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id*.

"The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'— that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, No. 09-144, 2009 WL 3712013, at *2 (Nov. 9, 2009). The governing Supreme

-3-

Court case is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). Under the prejudice prong, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where it is expedient to do so, a court may resolve an ineffective assistance claim based solely on the prejudice prong; in other words, where a petitioner cannot establish prejudice, there is no need to consider in detail whether counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

<u>Trial Counsel</u>

At the conclusion of the Government's case, Cantrell's trial counsel moved for a directed verdict based, in part, on his belief

-4-

that the Government had failed to properly identify him as the defendant in this case.   This Court took that issue under advisement and proceeded with trial.  Cantrell's trial counsel did not offer any witnesses in his case in chief.  Trial counsel now indicates that he decided to forego presenting witnesses because he believed the Government would elicit identification testimony via its cross-examination of defense witnesses that would defeat his motion for directed verdict.  Cantrell asserts that his attorney rendered ineffective assistance of counsel by not presenting witnesses after the Government concluded its case-in-chief.

### Performance

Cantrell argues trial counsel's performance was constitutionally deficient for misunderstanding Rule 29(b) of the Federal Rules of Criminal Procedure, causing counsel to fail to call Cantrell and Cvitkovich as witnesses.   In support of this claim, Cantrell attaches the affidavit of trial counsel, which essentially states as much, providing that trial counsel did not call witnesses in Cantrell's case in chief because he misunderstood Rule 29.  (Ex. L).  The Government contests the factual assertions in Cantrell's trial counsel's affidavit, but concedes that this dispute merely creates an issue of fact regarding trial counsel's performance.  Usually, such an issue of fact would be resolved by the Court after conducting a hearing to determine which set of

-5-

facts is true.  However, because Cantrell has failed to establish that trial counsel's alleged deficient performance caused him any prejudice, as discussed below, there is no need to resolve the question of trial counsel's performance.

Simply put, even if trial counsel failed to call any witnesses based on his misunderstanding of Rule 29, that failure did not alter the outcome of the trial.

### Prejudice

As a threshold matter, trial counsel's decision not to present witnesses must have caused prejudice, as that term is defined by *Strickland* and its progeny, or the ineffective assistance of counsel claim fails.  Indeed, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceedings if the error had not effect on the judgment." *Strickland*, 466 U.S. at 691.  Cantrell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the trial]." *Id.* at 694.

In support of his motion, Cantrell includes the affidavit of trial counsel, Attorney Kevin Milner.  (Ex. L).  Milner provides that:

> 14.  As stated, I intended to present witness testimony in Cantrell's defense.  However, I did not call

-6-

any defense witnesses to the stand because the Court had reserved ruling on my motion for directed verdict. I believed that the government had failed to formally identify Cantrell as the defendant at trial and that my motion would ultimately be successful. Because of this, I advised Cantrell that if I called any witnesses to testify on his behalf, the government would use that opportunity to cross-examine his witnesses as to his identity and would thus be able to establish a formal, in-court identification and defeat the success of my motion for directed verdict.

15. Also, as stated, Cantrell was present and available to testify on his own behalf. Cantrell likewise wanted to testify on his own behalf. If called to the stand, Cantrell would have explained the circumstances surrounding the series of contracts between AFC and North Township, the legal advice he received and relied upon in this regard, the actions and statements of the various witnesses, and his understanding of what was occurring. Further, Cantrell would have provided testimony in direct rebuttal [of] the statements and accusations of various witnesses including, but not limited to the government's main witness, Nancy Fromm.

16. However, I advised Cantrell that my motion for directed verdict would be successful because the government had failed to formally identify him as the defendant at trial. I advised Cantrell that if he took the witness stand, the government would use that opportunity to cross-examine him as to his identity and would thus be able to establish a formal, in-court identification of the defendant and thus defeat the success of my motion for directed verdict. I directed Cantrell not to testify on his own behalf. Despite his expressed desire to testify on his own behalf, Cantrell complied with my direction.

(Ex. L).

First, Cantrell argues that he was deprived of his right to testify based on his attorney's deficient advice. (Ex. L, ¶¶ 14-16). Cantrell argues that "[t]his alone justifies a claim of ineffective assistance of counsel." (DE# 168, p. 13). However,

-7-

that is not the law in this Circuit.  The Seventh Circuit has concluded that "a defendant who forfeits his constitutional right to testify because of counsel's deficient performance is not automatically prejudiced." *Alexander v. United States*, 219 Fed. Appx. 520, 523 (7th Cir. 2007)(citing *Barrow v. Uchtman*, 398 F.3d 597, 608 n.2 (7th Cir. 2005).  So, even if Cantrell can show that his trial counsel deprived him of his right to testify, Cantrell must still show "that there is a reasonable probability that his failure to testify affected the outcome of the trial." *Id.(citations* omitted).

Trial counsel's affidavit regarding what Cantrell's testimony would have been at trial speaks only in generalizations.  The affidavit points out that, if called to testify, Cantrell would have "explained the circumstances surrounding the series of contracts between AFC and North Township, the legal advice he received and relied upon in this regard, the actions and statements of the various witnesses, and his understanding of what was occurring" and "provided testimony of direct rebuttal" of "various witnesses." (Ex. L, ¶ 15).  This generalized proffer as to what Cantrell would have testified to in opposition to the Government's case is insufficient to establish prejudice under *Strickland*. *United States v. Herrera-Rivera*, 25 F.3d 491, 497 (7th Cir. 1994)(noting that "vague and general allegations are insufficient to satisfy . . . the *Strickland* test).  Indeed, it does not specify

-8-

what Cantrell would have said or explained how his testimony would
have changed the outcome of the trial.   These generalized
statements fail to establish a reasonable probability that
Cantrell's failure to testify affected the outcome of the trial
and, as such, are fatal to his claim.  *United States ex rel. Cross
v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987)("[t]he district
court simply cannot fulfill its obligation under *Strickland* to
assess prejudice until the petition has met his burden of supplying
sufficiently precise information.").

     In his reply brief, Cantrell supplements his argument to add
that he would have called Cvitkovich as a witness, too, if he had
not misunderstood Rule 29.  Attached to the reply brief is a second
affidavit from trial counsel and also an affidavit from former
North Township Trustee, Greg Cvitkovich.  In his second affidavit,
trial counsel states that he not only planned to call Cantrell as
a witness, but also Greg Cvitkovich.   However, because of the
outstanding ruling on his motion for directed verdict, he chose not
to call either of them as witnesses.  (Ex. M).  In his affidavit,
Cvitkovich stated that:

     3.   If called to testify, I would have stated that, as
     the North Township Trustee, I had sole authority over the
     office and had the final word on all decisions.  Further,
     that no one, including Robert Cantrell, ever instructed
     me on how to run the office or on whom to hire and fire.

     4.   I would have further testified that in 1999 in
     contracted, on behalf of North Township, with Nancy
     Fromm, of Addiction and Family [C]ounseling, to provide
     various classes to my employees.  I had met with Ms.

-9-

Fromm through a mutual acquaintance, Steve Bodak. Further, I would have testified that Mr. Cantrell did not participate in the transaction at all and that the arrangement occurred prior to Mr. Cantrell's employment with North Township.

5. Finally, I intended to testify that the classes provided by Addiction and Family Counseling were beneficial to my employees and a popular benefit they enjoyed. Further, that many of the classes had been chosen by my employees themselves as being of particular interest. And lastly, that Mr. Cantrell played no role in choosing the classes or in coercing any of my employees to attend.

(Ex. N).

Although Cantrell offers these supplemental affidavits in his reply brief to add the testimony that Cvitkovich would have given at trial, Cantrell wholly fails to explain how Cvitkovich's proffered testimony casts doubt on Cantrell's convictions. Cantrell merely claims -without any articulation- that Cvitkovich's testimony makes the jury verdict unreliable. Cantrell's contention, without any supporting argument, case citation or development, is not persuasive. Indeed, Cvitkovich's proposed testimony regarding Cantrell's lack of involvement in the 1999 contract is of little value. As the Seventh Circuit recognized, "Cantrell trumpets the fact that the first contract between AFC and North Township predated his employment with the latter. This is immaterial however, because the renewal contracts, whose terms were engineered by Cantrell, postdated his hiring." *Cantrell*, 617 F.3d at 922, n. 3. Moreover, this Court declines to speculate and construct Cantrell's potential arguments. It is not this Court's

-10-

job to sift the record and make the parties' arguments for them. See, e.g. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Even if Cantrell could argue that the allegations in Cvitkovich's affidavit had some exculpatory value, Cantrell ignores the reality that, had Cvitkovich taken the stand, he would have been impeached with his prior felony conviction stemming from his time as North Township Trustee, which would have weighed against his credibility. *Alexander*, 219 Fed. Appx. at 524. It is not reasonably likely that Cvitkovich's testimony, given his diminished credibility as a convicted felon, would have swayed the jury's verdict. Indeed, when weighed against the overwhelming evidence at trial against Cantrell, Cvitkovich's testimony would more than likely have been unpersuasive.

In sum, Cantrell has failed to establish that his trial counsel's failure to call either Cantrell or Cvitkovich as witnesses caused him any prejudice.


Appellate Counsel

To succeed in showing that his appellate counsel was ineffective, Petitioner must again meet the test set forth in *Strickland*, 466 U.S. at 686-87. Although the test was developed in the context of ineffective assistance of trial counsel, it is also

used for claims of ineffective assistance of appellate counsel.
*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Therefore,
counsel's performance must have been deficient, and the deficiency
must have prejudiced the Petitioner. *Id.* In *Gray*, the Court
stated that:

> [T]he district court must examine the trial
> court record to determine whether appellate
> counsel failed to present significant and
> obvious issues on appeal. Significant issues
> which could have been raised should then be
> compared to those which were raised.
> Generally, only when ignored issues are
> clearly stronger than those presented, will
> the presumption of effective assistance of
> counsel be overcome.

*Id.* at 646; *see also Kelly v. United States*, 29 F.3d 1107 (7th Cir.
1994), *overruled on other grounds by United States v. Ceballos*, 302
F.3d 679, 690 (7th Cir. 2002). As with ineffective assistance of
trial counsel claims, strategic decisions will not be second-
guessed. *Gray*, 800 F.2d at 646.


Performance

"Deficient performance is to be judged according to an
objective standard of reasonableness, giving a high degree of
deference to counsel, and making every effort to evaluate the
conduct from counsel's perspective at the time without the
distorting effects of hindsight." *United States v. Goudy*, 792 F.2d
664, 672 (7th Cir. 1986)(*quoting United States v. Sherwood*, 770

F.2d 650, 655 (7th Cir. 1985)).

After appellate counsel briefed Cantrell's appeal and participated in oral argument, but before an appellate decision was rendered, the United States Supreme Court issued its opinions in *Skilling v. United States*, 130 S.Ct. 2896 (2010) and *Black v. United States*, 130 S.Ct. 2963 (2010), two cases that altered the honest services landscape. Cantrell argues that his appellate counsel "failed to adequately raise and argue how *Skilling's* substantive change in the law impacted his convictions for honest services fraud." Furthermore, Cantrell asserts that "despite the district court instructing Cantrell's jury in the same manner as the district court in *Black*, appellate counsel failed to raise . . . error in Cantrell's jury instructions." (DE# 168, p. 25). Cantrell argues that "[b]oth issues were viable and stronger than the discretionary sentencing issues raised by appellate counsel." (DE# 168, p. 17).

Notably, appellate counsel did raise the pending *Skilling* and *Black* cases and also the argument that "18 USC 1346 is unconstitutionally vague and should not be applied to Cantrell." (Ex. B). In that argument, appellate counsel provided:

> The standard, in this Circuit, has long been that a defendant must violate a fiduciary duty for private gain in order to be guilty under 18 U.S.C. 1346. See *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998) at 655. This Court recently addressed this issue and reaffirmed that limiting principle in *United States v. Sorich*, 523

F.3d 702 (7th Cir. 2008)(cert denied) at 708-09. Cantrell's conduct falls well within the parameters of *Sorich*.

However, in this upcoming term, the United States Supreme Court will hear three (3) challenges to the applicability and/or validity of 18 U.S.C. 1346.  See Black v. United States, 08-876 (appeal from the 7th Circuit Court of Appeals, 530 F.3d 596); Weyhauch v. United States, 08-1196 (appeal from the 9th Circuit Court of Appeals, 548 F.3d 1237); and Skilling v. United States, 08-1394.  The Court was close to granting a fourth case (Sorich v. United States, 08-410, cert denied), and Justice Scalia's dissent in the cert denial in Sorich provides deep insight into the practical and constitutional difficulties with 18 USC 1346.

Until the Supreme Court decides how far and wide 1346 reaches, Cantrell would merely re-state the arguments in the Petitioner's briefs before the Supreme Court.  Also, until that time this Court would merely re-issue its' *Sorich* opinion.  Cantrell does not seek to waste this Court's efforts with that charade. He raises the issue for preservation purposes in the hopes of the Supreme Court granting relief which would in turn be applicable to him."

Ex. B.

Nevertheless, Cantrell complains that appellate counsel provided "inadequate, cursory statements, which omitted any reference to the district court record, [and] completely failed to provide any information whatsoever upon which the appellate court could consider the validity of Cantrell's convictions for honest services fraud."

On June 24, 2010, after oral argument but before an appellate opinion was issued in Cantrell's direct appeal to the Seventh

-14-

Circuit, the Supreme Court did decide *Skilling* and *Black*.  Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, appellate counsel submitted a letter of supplemental citations to the Seventh Circuit, which provided:

> Pursuant to FRAP 28(j), Appellant Robert Cantrell writes to respond to recent Supreme Court rulings as they affect this case.

> Subsequent to oral argument in this case, the Untied States Supreme Court issued opinions in *Skilling v. United States*[,] __ US __ (08-1394), and *Black v. United States*, __ US __ (08-876).

> The Government's 28(j) letter correctly states the limits that the Supreme Court placed upon conduct falling within 18 USC 1346.  Importantly, the Court declined to place "schemes of non-disclosure" and "conflict of interests" within that definition.  (*Skilling* at 39-40).

> The Indictment herein only alleges that Cantrell breached a fiduciary duty, under state law, by failing to file a disclosure of interest form.  (See DE 1, counts 1-4).  The Indictment does not allege traditional mail or wire fraud, and the Government's theory at trial paralleled the Indictment.

> Cantrell's conduct does not constitute either a bribe or a kickback.  Cantrell and the Government agree that the contract between AFC and North Township (NT) was proper at its inception.  Once he became employed by NT he was required to disclose his interest in the contract and failed to do so.  However, his employment at NT was not as a decision-maker with regard to contract renewals.  There is no evidence the Trustee and decision-maker received anything of value from Cantrell.  Hence no bribe. The money that he received from AFC was unchanged from the initial contract.  As he was in no greater position to influence the awarding of renewed contracts because of his employment status, AFC paid commissions cannot constitute kickbacks.  It is simple non-

disclosure, which the Supreme Court expressly stated as not falling within the confines of 1346. (See *Skilling* at 40).

Also, even were the Government correct, Cantrell's jury was not properly instructed. (See *Black*)[.] Cantrell did not object to jury instructions, at trial or appeal, because the trial court correctly instructed the jury as to the Seventh Circuit law at the time. As stated above, the law has changed making those instructions now invalid.

Last, because Cantrell was also convicted of other counts, his procedural challenges to sentencing must still be addressed.

The body of the letter, exclusive of heading and signature line, consists of 312 words, within the 350 word maximum allowed by Rule 28(j). Also enclosed pursuant to Circuit Rule 28(e) are ten copies of the *Skilling* and *Black* cases. I am providing copies of the letter and the supplemental authority to defense counsel this date.

(Ex. D).

Cantrell concedes that the Rule 28(j) letter mentions that Cantrell's jury wasn't properly instructed, based on the holding in *Black*, but Cantrell argues that appellate counsel was ineffective because he failed to identify any specific error in the instructions and failed to present sufficient argument as to how *Black* applied.

After looking at the record as a whole, this Court finds that appellate counsel acted reasonably in handling Cantrell's appeal. Cantrell correctly points out that appellate counsel could have

raised more extensive arguments regarding the impact *Skilling* and *Black* had on his case. However, Cantrell makes these points with the luxury of hindsight; a luxury appellate counsel did not have while briefing this appeal. Before *Skilling* and *Black* were decided, the controlling precedent was *United States v. Sorich*, which would have upheld Cantrell's convictions. 523 F.3d 702 (7th Cir. 2008). Given the state of the law, counsel can not be said to have performed deficiently by devoting much of his appellate brief on sentencing issues in lieu of focusing on the pending *Skilling* and *Black* cases. *Strickland*, 466 U.S. at 689(holding that the court should evaluate performance from counsel's perspective at the time); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996)("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel.").

While appellate counsel obviously knew of the *Skilling* and *Black* cases while Cantrell was being appealed, it would have taken an oracle to predict exactly how the Supreme Court would decide those cases. Indeed, Cantrell concedes that the *Black* and *Skilling* decisions "completely altered the legal landscape of honest services fraud." (DE# 168, p. 16). Thus, the manner in which appellate counsel raised the issue on appeal was more than reasonable and provided effective assistance. *United States v. Keeling*, 116 Fed. Appx. 958, 959 (10th Cir. 2004)(holding that "counsel's failure to foresee future developments in the law does

not constitute constitutionally deficient performance.")(citation omitted).

Surely, appellate counsel could have attempted to guess the forthcoming holding of the Supreme Court's *Skilling* and *Black* decisions and then discussed how Cantrell's case would be affected by those anticipated holdings.  However, failure engage is such speculation can not be said to be constitutionally deficient.  See *New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011)(recognizing that "failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professional competent assistance'"); *United States v. Garza*, 340 Fed. Appx. 243 (5th Cir. 2009)(finding that counsel did not render ineffective assistance at sentencing by failing to anticipate *Booker's* application of *Apprendi* to sentencing guidelines and to preserve error by making an objection).

This Court also finds that appellate counsel acted reasonably after the *Skilling* and *Black* decisions were handed down.  Cantrell argues that appellate counsel should have filed a supplemental brief after *Skilling* and *Black* were decided and that failure to do so was objectively unreasonable.  In support of this argument, Cantrell cites to *Richardson v. United States*, where appellate counsel's failure to file supplemental briefs on appeal concerning the sudden change in law following the Supreme Court's decision in

-18-

*Booker* was deemed objectively unreasonable.  477 F.Supp. 2d 392 (D. Mass. 2007).   The circumstances in *Richardson*, though, are far different than those presented here.  Quite notably, in *Richardson*, appellate counsel did not argue *Booker* on appeal or raise it in a supplemental brief.  Here, however, appellate counsel did raise the pending *Skilling* and *Black* issues in his appellate brief. Moreover, once those cases were decided, appellate counsel brought the *Skilling* and *Black* decisions and their perceived impact on Cantrell's case to the attention of the Seventh Circuit pursuant to Rule 28(j), just as directed by the Federal Rules of Appellate Procedure.  And, while Cantrell criticizes appellate counsel for not making a more detailed argument in the Rule 28(j) letter, there is a 350 word limit on such letters.  Fed. R. App. P. 28(j).  So, even though the issues were not raised as extensively as Cantrell would have liked, they were raised nonetheless.  Because the *Skilling* and *Black* issues were raised in the appellate brief and in a Rule 28(j) letter, appellate counsel's failure to file a supplemental brief regarding cannot be said to be constitutionally deficient.

Cantrell's complaint regarding appellate counsel's failure to raise the jury instruction that the appellant made in *Black* is also unprevailing.  As discussed above, Cantrell's argument that his appellate counsel should have raised this issue in the appellate brief fails to acknowledge that *Black* was not decided until after

the oral argument in Cantrell's appeal.  And, appellate counsel did raise the issue in his Rule 28 letter.  Cantrell's appellate counsel stated that, due to the result in *Black*, Cantrell's jury was not properly instructed, by noting:

> Cantrell did not object to jury instructions, at trial or appeal, because the trial court correctly instructed the jury as to the Seventh Circuit law at the time.  As stated above, the law has changed making those instructions now invalid.

(Ex. D).

Cantrell blames appellate counsel's inadequate arguments for the Seventh Circuit affirming his conviction.  However, the Seventh Circuit concluded:

> The indictment charged Cantrell with using his position as a public official of North Township of Lake County, Indiana, to secure contracts for Addiction and Family Care, Inc. (AFC), a counseling company owned by an acquaintance, Nancy Fromm, in exchange for a share of the proceeds from the contracts.  By failing to fairly, honestly, and candidly award contracts, Cantrell defrauded North Township and its citizens of their right to his honest services.  This was clearly a kickback scheme, so § 1346 - even as pared down by Skilling - applies to Cantrell.

*Cantrell*, 617 F.3d at 921.

Nothing in the Seventh Circuit's opinion indicates that it based its opinion on any of appellate counsel's alleged deficiencies complained of by Cantrell.

Notably, two weeks after the Seventh Circuit affirmed his conviction, Cantrell's second appellate counsel, Daniel Rubinstein,

from the law firm of Greenberg Traurig LP, filed a petition for
rehearing. (Seventh Circuit Court of Appeals Docket # 08-1856, DE#
48). In this fifteen page document, Attorney Rubinstein presented
arguments that are essentially the same arguments Cantrell presents
here; those that he claims his appellate counsel failed to
adequately make on direct appeal. The arguments made in the
petition for rehearing were supported with citations to the record
and applicable law, including the Supreme Court's decisions in
*Skilling* and *Black*. Despite being presented with these arguments,
all of the judges on the panel voted to deny a rehearing and none
of the judges requested a vote for rehearing en banc. The petition
for rehearing was denied. (Seventh Circuit Court of Appeals Docket
# 08-1856, DE# 56). Cantrell downplays the significance of his
second appellate counsel's assistance, and argues that it does not
remediate prior appellate counsel's deficiencies because the
Seventh Circuit Court of Appeals has discretion in whether to grant
a petition for rehearing. This Court disagrees with Cantrell's
belief that the petition for rehearing was insignificant. Even
though the Seventh Circuit has discretion to entertain such a
petition, it is hard for this Court to believe that the Seventh
Circuit would refuse to rehear a case if a rehearing was warranted.
In sum, the Court finds Cantrell received a fair appeal and his
appellate counsel provided adequate assistance.

Based on an objective standard of reasonableness, this Court

finds that appellate counsel provided more than adequate assistance
to Cantrell, especially in light of counsel's perspective at the
time without knowing the Supreme Court's decisions in *Skilling* and
*Black*.  Because Cantrell failed to show his appellate counsel acted
deficiently, there is no need to examine the prejudice prong.


Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255
Proceedings, a district court must "issue or deny a certificate of
appealability when it enters a final order adverse to the
applicant."  A certificate of appealability may issue only if the
applicant "has made a substantial showing of the denial of a
constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a
showing, a defendant must show that "reasonable jurists could
debate whether (or, for that matter, agree that) the motion should
have been resolved in a different manner or that the issues
presented were adequate to deserve encouragement to proceed
further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (U.S. 2000)
(internal quotation marks and citation omitted).

For the reasons set forth above, Cantrell has not stated any
grounds for relief under section 2255.  The Court finds no basis
for a determination that reasonable jurists would find this
decision debatable or incorrect or that the issues deserve

-22-

encouragement to proceed further.  Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the reasons set forth below, Cantrell's petition is **DENIED**.  Further, this Court declines to issue Defendant a certificate of appealability.

DATED:  **March 29, 2013**                    /s/RUDY LOZANO, Judge
                                        **United States District Court**